Good morning, Your Honor. May it please the Court, Gail Ivens appearing on behalf of Petitioner Appellant Terrence McKnight. Unless the Court has questions about other issues raised in the briefing, I will start this morning with the positive soil misconduct issue. In looking at that issue, Mr. McKnight argued that was a clearly unreasonable application of established Supreme Court law. Excuse me, Ms. Ivens, I'm so sorry to interrupt you. I'm having a really hard time hearing you, except sometimes you're coming through. You might be leaning forward and backward as to your microphone or something, but I just want to make sure I don't miss any of your words. We did a test last week. Unfortunately, I live somewhere with satellite internet, not cable broadband internet. So it's possible that this is a problem on my end with my... Can you hear me now? I can, and sometimes your picture is freezing. That's no problem for me. If you could just keep your voice up. Just so you know, the problem on my end is a volume problem. We'll try to turn it up here too, and I'll try to stay out of your way. Okay. Thank you, Your Honor. In this case, the repetitive nature of the is the thing that makes this an unreasonable application. This was not at the Chardon or Clear or Donnelly, a one-time that was then, you know, objected to. There was an admonition. In some of those cases, the state was stricken. In this case, we started an opening statement. It continued through the trial. Closing argument, despite objections, it was repeated and repeated and repeated that the case had been cracked in a few minutes, that they were looking for TB. And neither of the trial court's admonition, which was given over and over again, but only because the statement was made over and over again, nor the prosecutor's statement that, well, we're just relying on the eyewitness testimony, was sufficient to prevent this from being prosecuted for a lifetime. The things that the California Court of Appeal relied on, no error, included that the jury did not send out a question. Sorry, I thought I took a look at the summation because that clearly was focused in upon in your argument. And during the course of the summation, he, the prosecutor did misstate how one was to consider the evidence, but then corrected himself. And then the judge corrected him as well. This evidence was clearly not to be used for the truth of the matter asserted. This evidence was to be used only to show what the police were thinking in response to the initial investigation. So why are you prejudiced if, in fact, it was made very clear to the jury, even at the time of the mistake made by the prosecutor, that that evidence was not to be considered as evidence in regard to the culpability of the defendant? Yes, Judge Sessions, if that had been the only, if that had been the only time that the prosecutor made the statement, then I think we wouldn't have an argument. But if in response, the prosecutor did not make an opening statement, continued through trial, and did it for a period of time during closing arguments, then it would appear to the jury that it was the leading one, that the trial court was honest with them because as soon as they were caught, the prosecutor would say the same thing again, that the case was I'm sorry, I'm still having some difficulty in hearing you. It sounds like you're, you know, way underwater and you're cutting in and out. So let me just, can I just pause here for a minute? Mary, are you on? Yes. Is there anything that we can do on this? Yes, I think what I would suggest, and apparently he's on the satellite internet, and I didn't have a video of this chocolate earlier, or the audio, so I would suggest calling him and I'll re-admit you to the session by phone. Okay, thanks. We'll do that. Hold on, so hold on just a second. Ms. Ivins? I guess, Mary, she's going to, Ms. Ivins is going to call in now? Yes. Okay. Do you have the number, Ms. Ivins? I do. Okay, so then we'll just wait until you call in here. Yes. Okay. Rebecca, if you want to have them call in, just reach out to them. I'm sorry, I can't hear you, Mary. Oh, I'm sorry. When Ms. Ivins joined initially, I asked her to make sure she had the number for me, but we may want to just reach out to her and get her that number. Mary? Yes. Mary, it's hard to hear you. There's a lot of static when you speak. I don't know if there's anything that can be done about it, but you kind of fade in and out a little bit, at least from where I'm, from what I can hear. Okay. I'll reach out to Sam on that. It looks like Ms. Ivins has joined. Oh, that's much better for you. Yes. Ms. Ivins, are you there now? Can you hear me? Ms. Ivins? Ms. Ivins? Rebecca, please give me your phone number so that she can reach me. Okay. Ms. Ivins, are you there? I am here. Okay. Now turn on the audio. Are we ready? Yes. Ms. Ivins, can you hear us? Can you respond? I can. I can hear you. I think you were responding to a question of Judge Sessions regarding prejudice and what your best argument is or why you were prejudiced. So please, if we could put another minute on for Ms. Ivins, Rebecca, I'd appreciate it. And then go ahead and proceed. Thank you, Your Honor. Yes, Judge Sessions, I was saying that the California Court of Appeals found the evidence irrelevant for the purpose of explaining what the officers did. They looked at the fact that the jury didn't send out any notes about the question, and that's not one of the factors ever identified by federal cases. The court also said that the evidence, the weight of the evidence was not insubstantial, which is also not a factor. The factor is whether it's weighty or overwhelming. And so if we look at the factors that the California Court of Appeals considered, they don't match up with what the federal courts have said we're to look at for purposes of prejudice for prosecutorial misconduct. Can I push back on that a little bit? We found Darden error in our case called deck, which is, you know, we don't find Darden error very often. And one of the things we did look at was that the jury was misled by the prosecutor's statement as evidenced by jury notes. What about what about that case? I recognize the statement in that case was very different. It was a misstatement of law. But I just want to push back on this notion that the jury notes were important in that case. That's true. In this case, it was an absence of jury notes. And so the Court of Appeals relying on the fact that the jury didn't ask the question as opposed to evidence that the jury was mistaken because they asked the question. And that provided some information to the court. So I'm just saying the absence of that should not be a factor. But even if it is, we still thank you. I guess why weren't the court's curative instructions enough to address, you know, your concerns or any of the concerns? I mean, I think that in reading the record in this case, what one sees is that the trial court, you know, continually gave the same curative instruction. Statements, you know, by the parties are not evidence. There was none of the sort of specific admonition that happened in Donnelly, you know, where there's the wrong statement, the misstatement. There's an objection. And the court specifically either strikes it or, you know, specifically says that is not evidence. And instead, in this case, the court gave a very rote, repetitive instruction of what the lawyers say is not evidence. But it happened so many times. I think that it's clear that any jury member would begin to think that, you know, it was meaningless that the court kept saying over and over again, it's not evidence. And the prosecutor immediately thereafter would make the same statement. It wasn't quite the same statement. Go ahead, Judge Sessions. I actually thought that there's some admonitions. Number one, that whatever a lawyer says is not evidence, but that but also the court really addressed that particular piece of evidence and said that evidence, that's the evidence of the defendant being identified by various people at the time of the shooting and it going out on the broadcast and it becoming a hearsay piece of evidence. The judge continually said that evidence is not being offered to prove the truth of the matter asserted. It's being offered to show what the officers were thinking as a basis of how they proceeded in the investigation. That's what he said. And do you have any objection to that particular instruction to the jury? I think the thing in this case that is troubling and distinguishes it from other cases is the fact that what the officers did in this case was irrelevant to the evidence that was being produced. So I'm not sure that that instruction really clarified when the comment was made so many times from opening statement through closing argument to the jury that it couldn't rely on it, especially when the prosecutor ended their closing argument again with that statement. If the court doesn't have further questions, I'd like to save the balance of my time for rebuttal. That's fine. Thank you, Ms. Ivins. Counsel? Good morning, Your Honors. Victoria Ratnikova for Appalese. May it please the court. The State Appellate Court's determination that there was no federal prosecutorial misconduct, federal constitutional prosecutorial misconduct, was not contrary to or an unreasonable application of United States Supreme Court law. And I'll just immediately rebut counsel's representation that it seems to me she was saying that the closing argument did not include an admonition that the evidence at issue was not to be used for the truth of the matter asserted. But the trial court gave that admonition during closing argument. It gave that admonition when the evidence was admitted, and it gave a limiting instruction on how to use evidence for limited purpose. Right. Can I stop you there? I think you're right. There were several, and that's Judge Sessions' point, right? There were several times the trial court said, no, it's not offered to prove the truth of the matter asserted. It's offered to show what the officer's state of mind. And so I think that the record is very clear on that point. And then the thing that may or may not matter in this case is we have the unusual circumstance where on appeal, the state court said, well, actually, that was wrong. That was wrong. That was not permissible. So could you speak to that? What do we do about to sort of unring that bell, given that there wasn't another legitimate reason for the evidence to come in, at least according to the court of appeals? Yes. So jurors have common sense. They receive an admonition not to use this evidence as proof of identity. And that was repeated throughout. So they knew they could not use it for proof of identity. And if the evidence was irrelevant for the prosecution or for the police officer's subsequent conduct, then, and no other relevance, then the jury would disregard that evidence during its deliberation. It would be a very weighty evidence. So right there, right there, you've just asserted, then they would disregard. Tell me, how do we know that? Help me feel comfortable about that, please. Certainly. So there were three strong eyewitness identifications in this case, and both the prosecutor and the defense attorney, during closing argument, repeated to the jury that this is the evidence of identity that it must evaluate and focus on solely. All three eyewitness identifications matched. One of the Warthams, the attempted by Wartham's earlier statement in an ambulance over the phone, identifying Appellant as the shooter. He didn't have a motive to lie about the identity during that phone call. And then also... Wait, wait, wait, excuse me, excuse me. I thought he did have a motive. I'm not sure that it's going to change the outcome. I'm just saying, I think he did, didn't he? Isn't the allegation that there were rival, rival members of rival groups? Yes, certainly a trial, but during a phone call when he's being transported in an ambulance and he's telling someone else that Appellant is the shooter, that is objective evidence that he was not biased in that moment. Then also there's Willingham's testimony. She was a reluctant witness at trial. She didn't want to have any part in it, but she witnessed the shooting and she identified Appellant as the shooter. And then most importantly, Appellant identified himself. He identified himself by immediately leaving the scene and then fleeing the Bay area. He was excited about the birth to his child and he was excited about the pregnancy. So there are numerous other objective factors identifying Appellant as the shooter here. Ms. Ratnikova, let me ask that, I guess, same kind of question. I mean, in a very, in a different way, I guess, because it seems like based on your, on your briefing, it doesn't appear that you dispute that the prosecutor's conduct was improper in repeatedly referencing the crime scene identification of Mr. Knight as the shooter. So is that still your position to me? And if it is, I guess, what's your best authority that the misconduct, because the California Court of Appeals considered it improper, did not rise to the level of a due process violation? Certainly, yes, it is still our position that what the prosecutor shouldn't have done if he did. But even Darden versus Wainwright itself teaches that it is not enough that the prosecutor's remarks were undesirable or even universally condemned. You still have to still inspect the trial with unfairness to the amount to a violation of due process. And we can compare this case to Darden, in fact. In that case, the prosecutor made comments that implied that the death penalty would be the only guarantee against the defendant committing another murder. And this was in the guilt or innocence phase of a death penalty trial. The prosecutor in that case incorporated the word animal into his characterizations of the defendant. And the prosecutor's arguments reflected the prosecutor's emotional reaction to the case. Nonetheless, the United States Supreme Court concluded that this did not so, in fact, the trial is to make it unfair. The appellate relies heavily on Berger versus the United States throughout its briefing, is there? Can you talk or respond to that, please? Yes, so that case is from the 1930s. It way predates Darden versus Wainwright. And the United States Supreme Court has clarified in Parker versus Matthews that Darden versus Wainwright is the applicable United States Supreme Court law in evaluating federal constitutional prosecutorial misconduct. So in this case, we're also looking to see whether the state appellate court reasonably applied Darden. And that means that reasonable jurors can still disagree as to whether this was correct. And nonetheless, this court must affirm the So you acknowledge the prosecutorial misconduct. The question is whether that makes the trial fundamentally unfair. In this particular case, it really is fairly gross prosecutorial misconduct. During the course of the trial, the prosecutors told repeatedly that this evidence has been the guilt of the defendant. And yet the prosecutor begins the summation. The crux of his argument is, oh, this case was settled, was cracked within five minutes. I mean, it really is a pretty extreme rejection of what the district court, what the judge had been doing all along. So to what extent, when you have a really gross violation of prosecutorial responsibility, should that play a part in whether or not it weighs against the prejudice argument? Your Honor seems to suggest that the culpability of the prosecutor somehow weighs into this consideration of prosecutorial misconduct. And it does not. In Smith v. Phillips, the United States Supreme Court made clear that the fairness of the trial and not the culpability of the prosecutor is what we look to. And in light of the repeated admonitions here and the strong weight of identity that I discussed previously, there was no fundamental unfairness in this trial. And may I also add that in addition to proving that this trial is rendered fundamentally unfair, an appellant is obligated to prove prejudice under Brecht v. Abramson. He has to prove that he was actually prejudiced, that there was a substantial and injurious effect on the verdict. An appellant hasn't even made that argument. He hasn't made it either in his federal habeas petition, he hasn't made it in his opening brief, and he hasn't even made it in his argument here in court. So automatically, for that reason alone, his claim fails. Could I follow up on Judge Sessions' question, please? Because I don't want to leave that point too quickly. I agree with Judge Sessions that this is extreme. It was repeated. And I think it looks to me, you know, always tough on appeal to look back at the record, but this was not a subtle point. And there were prosecutors reminded repeatedly. And it looks intentional to me. Absolutely intentional. Prosecutor knew what he was doing. So when you say we don't factor that in, I'm not so sure that's right. I'm not so sure I'm comfortable with that notion. Prosecutors are human and they slip up and they goof. You know, that's one thing to let something slip, of course. But is it really the position of the government that if a prosecutor is intentionally crossing that line, we should ignore it? Well, this court shouldn't ignore it, but it still nevertheless needs to look at the objective, make an objective evaluation of whether that conduct rendered the trial fundamentally unfair. And this is a direct quote from Smith v. Phillips, but it's the fairness of the trial and not the culpability of the prosecutor that matters. And that's at 455 U.S. 209, 219. I think that's right. So why doesn't this make the trial unfair? That's where we're coming at. Is it fair that the prosecutor should repeatedly violate an express direction from the trial court? That's Judge Sessions' point, I think. I'd just like to hear your best shot at that. So while the prosecutor shouldn't have done what he did, he nevertheless reversed himself, told the jury himself that that was not the purpose for what the evidence should be used. And our position is that in light of the repeated admonitions, including the prosecutor's own direction and the strength of the other identity evidence in this trial, that the trial was not rendered fundamentally unfair and appellant was not prejudiced under breath. Thank you, counsel. Thank you. Thank you. Ms. Ivins? Yes, two brief points. One, my opponent said twice that the eyewitness evidence was strong, but the Court of Appeal at ER 13 said appellant correctly contends that all three eyewitness evidence had substantial weaknesses. So I think that even the California Court of Appeal thought that they had substantial weaknesses. And to turn to Darden, the U.S. Supreme Court found that there were several reasons why the comments did not prejudice the defendant. One, they said that it was fair comment in response to a defense argument, that the prosecutor did not misstate the evidence, and that the weight of the evidence in Darden was heavy, and the court instructed the jury. And so we don't have that situation here, and I think that makes it clear that in this case, it was an unreasonable application of Darden. Thank you. Ms. Ivins, unless Judge Christin or Judge Sessions have any further questions? No. Thank you. That concludes this case, but Ms. Ivins and Ms. Ratnikova, I appreciate your oral argument and your presentations here today. The case of McKnight v. R. Johnson is now submitted.
judges: Murguia, Christen, Sessions